NATIONAL ASSOCIATION OF HOME
BUILDERS OF the UNITED
STATES, et al., Plaintiffs,

v.

CHESTERFIELD COUNTY, Defendant.

Civ. A. No. 3:95CV402.

United States District Court,
E.D. Virginia,
Richmond Division.

Nov. 29, 1995.

Glen Franklin Koontz, National Association of Home Builders, Washington, DC, Mary V. DiCrescenzo, Washington, DC, for National Association of Home Builders of United States.

Willard Todd Benson, Bondurant & Benson, Richmond, VA, Thomas Ogburn Bondurant, Jr., Bondurant & Benson, Richmond, VA, for Home Builders Association of Virginia, Home Builders Association of Richmond.

Steven Latham Micas, Jeffrey Lee Mincks, Michael S.J. Chernau, County of Chesterfield, Lisa Charlotte Dewey, Office of County Attorney, Chesterfield County, Chesterfield, VA, for Chesterfield County.

## MEMORANDUM

MERHIGE, District Judge.

This matter is before the Court on the cross-motions of the parties for summary

judgment. Plaintiffs are the National Association of Homebuilders, Homebuilders Association of America, and Homebuilders Association of Richmond. Defendant is Chesterfield County, Virginia ("the County").

## Background

In this case the plaintiffs assert that the cash proffer policy ("the Policy") adopted by the County's Board of Supervisors pursuant to *Va.Code* § 15.1–491.2 facially violates the Fifth Amendment to the United States Constitution's prohibition on taking of property without just compensation.[1] The plaintiffs assert that the Policy mandates the payment of cash in exchange for favorable action on residential rezoning applications.

## Discussion

Under Federal Rule of Civil Procedure 56(c), the moving party is entitled to summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The burden is on the moving party, and "the facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to … the party opposing the motion." *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir.1985). The non-moving party, however, may not rest on mere allegations or denials contained in the pleadings, but must come forth with specific facts with affidavits, depositions, interrogatories or other evidence to show a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Allstate Financial Corp. v. Financorp, Inc.,* 934 F.2d 55, 58 (4th Cir.1989). Summary judgment is proper "if the evidence is such that a reasonable jury could [not] return a verdict for the non-

moving party." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2511–12.

In this case there are no material factual disputes. The dispositive issue is the purely legal question of whether the Policy is facially invalid under the Takings Clause of the Fifth Amendment to the United States Constitution.

■ A party mounting an attack under the Takings Clause on the facial constitutionality of a statute or zoning ordinance must show that the "mere enactment" of the statute or ordinance constitutes a taking. *Agins v. Tiburon,* 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980); *Keystone Bituminous Coal Ass'n v. DeBenedictis,* 480 U.S. 470, 494–495, 107 S.Ct. 1232, 1246–1247, 94 L.Ed.2d 472 (1987); *National Advertising Company v. City of Raleigh,* 947 F.2d 1158, 1165, n. 9 (4th Cir.1991); *Beacon Hill Farm Associates II Limited Partnership v. Loudoun County Board of Supervisors,* 875 F.2d 1081, 1083–1084 (4th Cir.1989). As the Supreme Court has noted, the party making such a challenge faces an "uphill battle." *Keystone,* 480 U.S. at 495, 107 S.Ct. at 1247.

■ Application of an ordinance effects a taking if "the ordinance does not substantially advance legitimate state interests … or denies an owner economically viable use of his land." *Agins,* 447 U.S. at 260, 100 S.Ct. at 2141. Mere enactment of the Policy did not result in any physical occupation of property by the County, nor did it deprive all economically beneficial use from property; accordingly, enactment of the Policy did not effect the second variety of taking contemplated in *Agins. See Garneau v. City of Seattle,* 897 F.Supp. 1318, 1325 (W.D.Wash. 1995), *citing Lucas v. South Carolina,* 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992). However, the Court concludes it must still determine whether enactment of the Policy was violative of the Takings Clause by not substantially advancing legitimate state interests. For the reasons which follow, the Court believes the policy in issue passes constitutional scrutiny.

---

1. In its Order of July 18, 1995, the Court held that the plaintiffs lacked standing to bring an "as

applied" challenge to the Policy.

The Policy at issue is designed to provide for the capital improvements required by development in the County. It is not disputed that this is a legitimate state interest. However, in order for any specific exaction implemented under a zoning ordinance to pass constitutional muster under the Takings Clause of the Fifth Amendment an "essential nexus" must exist between the exaction and the legitimate state interest. *Nollan v. California Coastal Comm'n*, 483 U.S. 825, 837, 107 S.Ct. 3141, 3148, 97 L.Ed.2d 677 (1987). The Supreme Court has used the term "rough proportionality" to describe the nexus which is required. *Dolan v. City of Tigard*, —— U.S. ——, —— – ——, 114 S.Ct. 2309, 2319–2320, 129 L.Ed.2d 304 (1994). "Rough proportionality" was defined by the Court as requiring "[n]o precise mathematical calculation" but rather "some sort of individualized determination that the required dedication is related both in nature and extent to the impact of the proposed development." *Id.*

The parties have expended great effort to convince the Court that the Supreme Court's decision in *Dolan v. Tigard* is, or is not, applicable in this case. The defendant urges that *Dolan v. Tigard* is applicable only in "as applied" challenges to adjudicative decisions. The plaintiffs assert that decisions on rezoning applications made according to the Policy are incapable of meeting the "rough proportionality" standard laid out in *Dolan v. Tigard* and that the Policy is accordingly facially invalid.

It appears to the Court that *Dolan v. Tigard* is relevant, if at all, because it might set out the test for which any particular application of the County's Policy must meet. If this is so, the question in this matter becomes whether it is possible for County officials to apply the Policy currently at issue in accordance with *Dolan v. Tigard*. However, the Court need not definitively resolve the issue of the applicability of *Dolan v. Tigard* because it determines that the Policy is capable, on its face, of application consistent with the *Dolan v. Tigard* standard. *See United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697 (1987)

("the challenger must establish that no set of circumstances exists under which the Act would be valid"); *Action for Children's Television v. Federal Communications Commission*, 59 F.3d 1249, 1259 (D.C.Cir.1995) (stating that the challenger must show that the Act is incapable of constitutional application); *see also, Jordan v. Jackson*, 15 F.3d 333, 344 (4th Cir.1994) ("[t]he fact that the relevant statute might operate unconstitutionally under some conceivable circumstances is insufficient to render it wholly invalid").

The County of Chesterfield has adopted an ordinance which authorizes it to accept cash proffers. *Chesterfield County Code* § 21.1–8. In order to guide its acceptance of proffers under this authority under § 21.1–8, the County Board of Supervisors adopted the Policy at issue in March of 1990 and subsequently as amended. The Policy states that it "is applicable to all residential rezoning requests." Through a process involving five "components" the Policy calculates "what a new home will cost the County in terms of providing public facilities such as schools, roads, parks, etc." Some of these figures are calculated based on county-wide averages and some are determined based on smaller units. Through these calculations the Policy determines a "maximum cash proffer" amount which a rezoning applicant may tender with his rezoning application. According to the Policy, currently "[r]esidential rezoning applicants are being asked to proffer a maximum of $5,083 per lot [plus an indexed amount for payments after a certain date]." The plaintiffs argue that, in reality, the County requires the maximum proffer in all cases. However, the issue before the Court is whether the Policy is, on its face, capable of application in accordance with the Fifth Amendment. The Policy establishes a maximum proffer amount based on the average cost to the County of a new home. The Policy explicitly provides, however, that this amount is a maximum. According to the language of the Policy there is no requirement that any, or any particular, amount of cash must be proffered for rezoning approval.[2] The Court accordingly concludes that

---

2. While it is not directly relevant, the Court notes

that this interpretation of the Policy is supported

there is no reason apparent on the face of the Policy why the proffers required, if any, can not determined in an "individualized" manner and fixed at an amount "roughly proportional" in "nature and extent to the impact of the proposed development" according to the test set out in *Dolan v. Tigard.*[3]

### Conclusion

The Court concludes that the Cash Proffer Policy of the County of Chesterfield is not facially violative of the Takings Clause of the Fifth Amendment to the United States Constitution. Accordingly, the Court must grant summary judgment to the defendant.

An appropriate Order shall issue.

### FINAL ORDER

For the reasons stated in the Memorandum of the Court this day filed and deeming it proper so to do, it is ADJUDGED, ORDERED AND DECREED as follows:

Plaintiffs' motion for summary judgment be and the same is hereby DENIED.

Defendant's motion for summary judgment be and the same is hereby GRANTED, and the Defendant stands dismissed with its taxable costs.

Let the Clerk send copies of the Memorandum and this Order to counsel of record.

by affidavits submitted by the plaintiffs which indicate that some rezoning applications are, indeed, granted in the absence of a proffer of the maximum amount. The plaintiffs at oral argument on the instant motion argued that the instances where no proffers were required by the County for favorable action on a rezoning application were instances where the County violated its own Policy and that the language of the Policy, in fact, mandates proffers in all cases. The Court does not agree with this reading of the Policy. The Court finds that the language of the Policy, on its face, establishes a maximum proffer amount but does not require that a proffer be made in every instance.

3. The Court notes that it does not reach the question of whether *Dolan v. Tigard* is, in fact, applicable to the particular decisions on rezoning applications rendered pursuant to the Policy. The Court merely finds that it is possible for decisions on rezoning applications rendered in accordance with the Policy also to accord with the test in *Dolan v. Tigard.* Indeed, the Court has not held that it is necessarily unconstitutional for the County to always demand the maximum proffer amount.