MORTON COLLEGE BOARD OF TRUSTEES OF ILLINOIS COMMUNITY COLLEGE DISTRICT NO. 527, Plaintiff,

v.

The TOWN OF CICERO, Defendant.

No. 97 C 8766.

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 1, 1998.

Stanley T. Kusper, Jr., David A. DeYoung, Kusper & Raucci, Chartered, Chicago, IL, Michael John Maher, Gregory Linn Cochran, Elizabeth Schroer Harvey, McKenna, Storer, Rowe, White & Farrug, Chicago, IL, for Plaintiff.

Bradley Daniel Birge, Pulliam & Birge, Chicago, IL, Merrick Scott Rayle, Rayle and Partners, Chicago, IL, Maureen Martin, Martin Law Firm, Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Before the court is defendant's motion to dismiss plaintiff's second amended complaint. For the following reasons, the court denies defendant's motion.

### I. BACKGROUND

Plaintiff Morton College Board of Trustees of Illinois Community College District No. 527 ("the College") has filed suit against the Town of Cicero ("the Town") in this court. The College's second amended complaint contains nine counts. Counts 1, 2, and 3 are claims under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601–9675. Counts 4, 5, 6, and 7 are claims under the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6901–6992. Count 8 is a state-law claim for nuisance. Count 9 is a state-law claim for continuing intentional trespass. This court has subject matter jurisdiction over the CERCLA claims pursuant to 42 U.S.C. §§ 9613 and 9659; over the RCRA claims pursuant to 42 U.S.C. § 6972(a); and over the state-law claims pursuant to 28 U.S.C. § 1367.

The dispute between the parties centers on a piece of land that the Town sold to the College. In its second amended complaint, the College contends that while the Town

owned the property, several different types of hazardous wastes were dumped on it. The College alleges that those hazardous wastes have contaminated the property.

Before suit was filed in this court, two other suits between the parties had been commenced. The first is a suit before the Illinois Pollution Control Board ("the Board") in which the College is the plaintiff and the Town is the defendant. In that suit, the College alleges violations of the Illinois Environmental Protection Act. The second is a suit before the Circuit Court of Cook County in which the Town is the plaintiff and the College is the defendant. In that suit, the Town asks the circuit court to grant the following relief: (1) to declare that an "as is" provision contained in the purchase agreement between the parties immunizes the Town from any liability under either state or federal environmental regulations with respect to the property in question; (2) to order the College to abate the public nuisance created by the contaminated property; (3) to enjoin the Board from adjudicating the action between the College and the Town; and (4) to grant a preliminary injunction enjoining the College from proceeding on its case before the Board.

This case is currently before the court on the Town's motion to dismiss the College's second amended complaint. In its motion to dismiss, the Town argues that this court should abstain from exercising jurisdiction over this case pursuant to either the abstention doctrine stated in *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), or the abstention doctrine stated in *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).[1]

## II. *DISCUSSION*

The sole question before this court is whether the court should abstain from adjudicating this case. The Town argues that abstention is "required" under either the *Burford* abstention doctrine or the *Colorado*

*River* abstention doctrine. The College argues that abstention would not be proper under either doctrine.

"[F]ederal courts have a strict duty to exercise the jurisdiction conferred upon them by Congress." *International College of Surgeons v. City of Chicago,* 153 F.3d 356, 359 (7th Cir.1998) (citing *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 716, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996)). The Supreme Court has described this duty as " 'virtually unflagging.' " *New Orleans Pub. Serv., Inc. v. Council of New Orleans,* 491 U.S. 350, 359, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) (quoting *Deakins v. Monaghan,* 484 U.S. 193, 203, 108 S.Ct. 523, 98 L.Ed.2d 529 (1988)). Because this is so, the doctrine of abstention is " 'an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it' and may be invoked only in those 'exceptional circumstances' in which surrendering jurisdiction 'would clearly serve an important countervailing interest.' " *International College of Surgeons,* 153 F.3d at 359 (quoting *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 188–89, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959)).

The party requesting abstention bears the heavy burden of showing that abstention is warranted. *Seay v. Dodge,* No. 95 C 3643, 1995 WL 557361, at *6 (N.D.Ill. Sept. 18, 1995); *Illinois Pub. Interest Research Group v. PMC, Inc.,* 835 F.Supp. 1070, 1076 (N.D.Ill.1993). The decision of whether to abstain is committed to the sound discretion of the district court. *International College of Surgeons,* 153 F.3d at 359.

### A. *Burford abstention*

The first issue is whether this court should abstain from adjudicating this case based on the *Burford* abstention doctrine. Under that doctrine, a federal court should abstain from deciding an unsettled question of state law that relates to a complex state regulatory scheme. *International College of*

---

1. The Town does not argue, and the court does not find, that abstention would be appropriate under *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), and its progeny or under *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny.

*Surgeons,* 153 F.3d at 360. The *Burford* abstention doctrine "is concerned with protecting complex state administrative processes from undue federal influence." *New Orleans Pub. Serv., Inc.,* 491 U.S. at 362, 109 S.Ct. 2506. It is not concerned with the rights of the parties in the case at hand. *International College of Surgeons,* 153 F.3d at 360.

■■■ There are two different situations in which *Burford* abstention is appropriate. The first is in a case involving a " 'difficult question of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar.' " *Quackenbush,* 517 U.S. at 726–27, 116 S.Ct. 1712 (quoting *New Orleans Pub. Serv., Inc.,* 491 U.S. at 361, 109 S.Ct. 2506 (quoting *Colorado River,* 424 U.S. at 814, 96 S.Ct. 1236)). The second is where exercise of federal jurisdiction " 'would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.' " *Id.*

■■■ Determining whether to abstain under *Burford* requires the court to make a fact-intensive inquiry. *General Ry. Signal Co. v. Corcoran,* 921 F.2d 700, 709 (7th Cir. 1991). In making such an inquiry, the court should consider (1) whether the suit is based on a cause of action which is exclusively federal; (2) whether difficult or unusual state laws are at issue; (3) whether there is a need for coherent state doctrine in the area; and (4) whether state procedures indicate a desire to create special state forums to adjudicate the issues presented. *Id.; White & Brewer Trucking, Inc. v. Donley,* 952 F.Supp. 1306, 1311 (C.D.Ill.1997).

### 1. Whether the suit is based on a cause of action which is exclusively federal

■■■ First the court must consider whether the College's suit in this court is based on a cause of action which is exclusively federal. "The presence of federal-law issues must always be a major consideration against surrender." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 26, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *see also General Ry. Signal Co.,* 921 F.2d at 709 (explaining that the existence of federal-law questions tends to make abstention less ap-

propriate). However, "a federal court may abstain even from a case posing mixed federal and state law issues." *General Ry. Signal Co.,* 921 F.2d at 709. It is up to the district court to weigh the relative importance of the state and federal-law issues in the particular case at hand. *Id.*

In this case, seven of the nine-counts in the College's second amended complaint are based on federal law. Counts 1–3 are CERCLA claims. Counts 4–7 are RCRA claims. Counts 8 and 9 are state-law claims. Thus, this case involves both state and federal law.

One important factor which weighs heavily against abstention, however, is the fact that Counts 1, 2 and 3 of the complaint contain CERCLA claims. *See Central States, Southeast and Southwest Areas Health and Welfare Fund v. Old Sec. Life Ins. Co.,* 600 F.2d 671, 677 (7th Cir.1979). This court has exclusive original jurisdiction over the College's CERCLA claims. 42 U.S.C. § 6913. Thus, *Burford* abstention would not be appropriate because the state courts could not adjudicate the College's CERCLA claims. *New Orleans Pub. Serv.,* 491 U.S. at 361, 109 S.Ct. 2506 (explaining that *Burford* abstention is only appropriate "[w]here adequate state-court review is available").

The Town does not dispute that this court has exclusive jurisdiction over Count 1. (*See* Def.'s Reply at 5.) The Town, however, argues that this court does not have exclusive original jurisdiction over the CERCLA claims in Counts 2 and 3 because those claims "have direct analogs in the Illinois Environmental Protection Act." (*Id.*) The Town misses the point. Congress has created a remedy for citizens to recover under CERCLA and explicitly has granted exclusive jurisdiction to the federal courts to hear those claims. The fact that the College could have brought a claim under the Illinois Environmental Protection Act does not mean that the court does not have exclusive jurisdiction over the College's CERCLA claims.

The Town raises the interesting issue of whether this court has exclusive jurisdiction over the College's RCRA claims contained in Counts 4–7. Several courts have found that

the federal courts have exclusive jurisdiction over RCRA claims. *See, e.g., White & Brewer Trucking, Inc.,* 952 F.Supp. at 1306; *see also Fletcher v. United States,* 116 F.3d 1315, 1327 (10th Cir.1997); *Kerr–McGee Corp. v. Farley,* 115 F.3d 1498, 1502 (10th Cir.1997); *Reservation Tel. Coop. v. Three Affiliated Tribes of Fort Berthold Reservation,* 76 F.3d 181, 185–86 (8th Cir.1996); *Blue Legs v. U.S. Bureau of Indian Affairs,* 867 F.2d 1094, 1098 (8th Cir.1989). In contrast, the Sixth Circuit has found that the federal courts do not have exclusive jurisdiction over RCRA citizen suits. *Davis v. Sun Oil Co.,* 148 F.3d 606, No. 96–4077, 148 F.3d 606, 611 (6th Cir.1998). While an interesting issue, the court need not resolve it because it is undisputed that the federal courts have exclusive jurisdiction over the College's CERCLA claims and have a strong interest in providing a forum where the College can bring these claims.

■ Another factor which weighs against abstention is the dominance and importance of federal law in this case. First, federal law is more dominant than state law in this case. Even indulging the Town's argument that Counts 5 and 6 are preempted by state law, Counts 1, 2, 3, 4, and 7 are all federal claims. It is true that there are state-law issues involved in the federal claims. For example, the court must look to Illinois contract law in order to determine whether the "as is" provision is a defense to liability on the CERCLA claims. *See LaSalle Nat'l Trust v. ECM Motor Co.,* 76 F.3d 140, 144 (7th Cir.1996). However, before addressing this defense, the court must determine whether the Town is liable under CERCLA, which is a question of federal law. In addition to being dominate, the federal-law issues in this case are important. The Town has allegedly violated federal environmental laws. This court has a strong interest in allowing those claims to be litigated in federal court.

### 2. Whether difficult or unusual state laws are at issue

■ Next the court should consider whether difficult or unusual state laws are at issue. In determining whether the case involves difficult or complicated issues of state law, the court must consider the nature of the claim and the relative complexity of the body of law governing the claim. *Seay,* 1995 WL 557361, at *7. The court must be certain to analyze the specific issues presented in the case at bar. *See Board of Educ. of Valley View Community Unit Sch. Dist. No. 365U v. Bosworth,* 713 F.2d 1316, 1320 (7th Cir. 1983).

In this case, the Town argues that the cases between the parties raise several complex issues of state law which should be resolved by the state courts. These issues are (1) whether the "as is" clause in the purchase agreement immunizes the Town from liability under all state and federal environmental statutes; (2) whether "the Illinois Constitution's allocation to the State Courts of 'original jurisdiction over all justiciable matters' ... deprives the Illinois Pollution Control Board of the power to adjudicate the 'as-is' State common Law contractual issue"; and (3) "the scope of the powers granted to the Illinois Pollution Control Board by the Illinois General assembly." (Def's Memo. at 3.)

The Town does not specify why this court would ever need to address the above three issues. As to the first issue, presumably the Town will set up the "as is" provision of the purchase agreement as a defense to liability. *See* 42 U.S.C. § 9607(b). As to the second and third above issues, the court is unable to see any way in which those issues would ever need to be addressed by this court. Accordingly, the court finds that (1) the only issue of the above three issues which might arise in this litigation is whether the "as is" provision precludes the College from recovering from the Town and (2) the second and third issues are wholly irrelevant to this court's abstention analysis.

Determining the effect of the "as is" provision does not involve a difficult or complex issue of state law; rather, it involves only basic principles of contract interpretation. Federal courts are often called upon to interpret such contractual language in CERCLA cases. *See Harley–Davidson, Inc. v. Minstar, Inc.,* 41 F.3d 341, 344 (7th Cir.1994). Determining the effect of the "as is" provision "does not demand significant familiarity

with, and will not disrupt state resolution of, distinctively local regulatory facts or policies." *New Orleans Pub. Serv., Inc.,* 491 U.S. at 364, 109 S.Ct. 2506; *see also Property & Casualty Ins. Ltd. v. Central Nat'l Ins. Co. of Omaha,* 936 F.2d 319, 322 n. 5 (7th Cir. 1991) (explaining that the first type of *Burford* abstention was not involved because "the underlying issues require only basic principles of contract interpretation and do not implicate the concerns that the Supreme Court relied upon in *Burford*"). Thus, the principles underlying *Burford* are not implicated in this case.

It is true that Illinois has developed a complex regulatory scheme and policies to deal with environmental issues. However, that scheme and those policies are not at issue in this case. This case will not require the court to examine Illinois' permit process or to delve into the intricacies of Illinois' environmental law. *See White & Brewer Trucking, Inc.,* 952 F.Supp. at 1313. This suit merely concerns the issue of whether the Town is liable in any way for the condition of the property at issue. Thus, this case does not involve difficult or unusual issues of state law.

### 3. Whether there is a need for coherent state doctrine in the area

▆ The next factor the court must consider is whether there is a need for coherent state doctrine in the area. In considering this factor, the court must remember that *Burford* does not require abstention "whenever there exists [a complex administrative process], or even in all cases where there is a potential for conflict with state regulatory law or policy." *New Orleans Pub. Serv., Inc.,* 491 U.S. at 362, 109 S.Ct. 2506.

In this case, the court fails to see how its resolution of this case will interfere with Illinois' attempts to develop a coherent environmental policy. *See White & Brewer Trucking, Inc.,* 952 F.Supp. at 1313. The Town argues that *Burford* abstention is "required" because "Illinois needs to establish coherent State doctrine on these State environmental Laws" and that "[p]rotection of the environment is a matter of important State concern." (Def.'s Reply at 9.) These

general arguments, however, do not address whether *Burford* abstention is appropriate. It is true that Illinois must develop a coherent environmental policy; however, the Town has not explained how the adjudication of this case would interfere with Illinois' environmental policy. It is also true that the protection of the environment is an important state concern; however, it is also an important federal concern.

### 4. Whether state procedures indicate a desire to create special state forums to adjudicate the issues presented

▆ Finally the court must consider whether state procedures indicate a desire to create a special state forum to adjudicate the issues presented. A "special forum" is one that "stand[s] in a special relationship of technical oversight or concentrated review to the evaluation of . . . claims arising under the state administrative scheme at issue." *International College of Surgeons,* 153 F.3d at 363–64. The existence of a specialized forum is a prerequisite for the second type of *Burford* abstention. *Id.*

In this case, an administrative agency is implicated: the Board. The Illinois legislature created the Board, among other things, to adjudicate permit violations and to adopt environmental control standards applicable in Illinois. 415 ILL.COMP.STAT. § 5/5. However, the Illinois legislature did not create the Board to adjudicate the specific issues presented in this case. First, the Board was not created to adjudicate violations of federal environmental laws. In fact, the Board does not even have the authority to adjudicate violations of CERCLA as the federal courts have exclusive jurisdiction over CERCLA claims. Second, the Board was not created to deal with contractual issues such as the one presented by the "as is" provision. In fact, the Town argues in its complaint in circuit court that the Board does not have the jurisdiction to adjudicate the effect of the "as is" provision.

Once again, the court must note that *Burford* does not require abstention "whenever there exists [a complex administrative process], or even in all cases where there is a potential for conflict with state regulatory

law or policy." *New Orleans Pub. Serv., Inc.,* 491 U.S. at 362, 109 S.Ct. 2506. Simply because the Board exists does not mean that this court should abstain from hearing any environmental cases that arise in Illinois. Such a broad proposition would preclude any federal court from hearing any case arising under either CERCLA or RCRA where the parties are citizens of a state which has a state administrative agency designed to address environmental protection issues.

### 5. Conclusion on *Burford* abstention

■ There is no formulaic test for determining whether to abstain under *Burford. Quackenbush,* 517 U.S. at 727, 116 S.Ct. 1712. Determining whether to abstain under *Burford* requires the district court to balance "the strong federal interest in having certain classes of cases, and certain federal rights, adjudicated in federal court" against "the State's interests in maintaining 'uniformity in the treatment of an essentially local problem'" and "retaining local control over 'difficult questions of state law bearing on policy problems of substantial public import.'" *Id.* The balance "rarely favors abstention." *Id.*

■ Based on the above considerations, this court finds that this case is not one of those rare cases in which the balance of the federal and state interests favors abstention. This case involves several federal claims, including three claims over which the federal court has exclusive jurisdiction. The case does not involve difficult or unusual issues of state law. Further, the court cannot see how the adjudication of this case would "unduly intrude into the processes of the State government or undermine the State's ability to maintain desired uniformity." *New Orleans Pub. Serv., Inc.,* 491 U.S. at 363, 109 S.Ct. 2506.

The Town relies on several cases in support of its position that *Burford* abstention is warranted in this case. All of these cases are easily distinguishable from the case at bar. In each of those cases, the court's determination of the issues presented would have required the court either to review the state's process of issuing permits, to review previous decisions made by the state's administrative agency, or to interfere with a

state enforcement proceeding. *See Coalition for Health Concern v. LWD, Inc.,* 60 F.3d 1188, 1194 (6th Cir.1995) (abstaining because deciding federal case would necessarily interfere with Kentucky's policies regarding issuance of permits); *Palumbo v. Waste Techs. Indus.,* 989 F.2d 156, 159 (4th Cir.1993) (abstaining because plaintiff's case was "nothing more than a collateral attack on prior permitting decisions of the Ohio EPA"); *Browning–Ferris, Inc. v. Baltimore County,* 774 F.2d 77, 80 (4th Cir.1985) (abstaining because case would require federal court to determine whether state should have issued permit); *Ada–Cascade Watch Co. v. Cascade Resource Recovery, Inc.,* 720 F.2d 897, 905 (6th Cir. 1983) (abstaining because federal plaintiffs essentially were requesting court to review two state-law provisions which were "integral part" of state's permit approval process); *Chemical Weapons Working Group v. United States Dept. of Army,* 990 F.Supp. 1316, 1320 (D.Utah 1997) (explaining that it need not reach defendant's *Burford* abstention argument); *Space Age Fuels v. Standard Oil Co.,* No. 95–1367–JE, 1996 WL 160741, at *3 (D.Or. Feb. 29, 1996) (abstaining because court's disposition of plaintiff's claims would require substantial interference with ongoing state enforcement action); *Friends of Santa Fe County v. LAC Minerals, Inc.,* 892 F.Supp. 1333, 1348–49 (D.N.M.1995) (abstaining because plaintiff's claim was "little more than an indirect collateral attack" on state administrative agency's previous decision). In this case, the court's disposition of plaintiff's claims would not require the court to review or interfere with Illinois' process of issuing permits, to review a previous decision made by the Illinois Pollution Control Board, or to interfere with a state enforcement proceeding. Accordingly, this court finds that this case is not one of those exceptional cases where *Burford* abstention is warranted.

### B. *Colorado River abstention*

■ Having determined that abstention is not warranted under *Burford,* the court must consider whether abstention is warranted under the *Colorado River* abstention doctrine. Under the doctrine set forth in *Colorado River,* a federal court may stay a suit in

exceptional circumstances when there is a concurrent state-court proceeding and the stay would promote "wise judicial administration." *Selmon v. Portsmouth Drive Condo, Ass'n*, 89 F.3d 406, 409–10 (7th Cir.1996); *Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 698, 700 (7th Cir. 1992).

 In order to determine whether a stay under the *Colorado River* doctrine is appropriate, the court must make a two-part determination. *Caminiti*, 962 F.2d at 700. The first step is to determine whether the suits are parallel. *Id.* The suits need only be "parallel" and not "identical." *Id.* Two suits are "parallel" when "substantially the same parties are contemporaneously litigating substantially the same issues." *Id.* (citations omitted).

 If the state and federal actions are parallel, the district court must consider at least ten factors to determine whether a stay is appropriate pursuant to *Colorado River*. *Id.* 962 F.2d at 702. These factors are:

(1) whether the state has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) the source of governing law, state or federal; (6) the adequacy of the state-court action to protect the federal plaintiff's rights; (7) the relative progress of state and federal proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim.

*LaDuke v. Burlington Northern R.R.*, 879 F.2d 1556, 1559 (7th Cir.1989). None of the above ten factors is dispositive. *Colorado River*, 424 U.S. at 818, 96 S.Ct. 1236. Rather, the court must determine whether a stay is appropriate by "taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise." *Id.* at 818–19.

██ In this case, the Town and the College are parties in this suit, the suit before the Board, and the suit in circuit court.

While the exact same claims are not being litigated in each of the suits, what is at issue in each of the three suits is whether the Town is liable for the environmental condition of the property. Thus, this court finds that the circuit court suit and the suit before the Board are parallel to the suit in this court.

Having determined that the suits are parallel, the court must determine whether a consideration of the relevant factors weighs in favor of a stay. Two of the factors weigh in favor of a stay. First, the issue of whether the Town is not liable due to the "as is" provision in the purchase agreement is currently being litigated in the circuit court; thus, the third factor (the desirability of avoiding piecemeal litigation) weighs in favor of a stay. Similarly, the fourth factor (the order in which jurisdiction was obtained by the concurrent forums) weighs in favor of a stay because both the case in the circuit court and the case before the Board were filed before suit was filed in this court.

Two factors, however, weigh heavily against a stay. The sixth factor (the adequacy of the state-court action to protect the federal plaintiff's rights) weighs heavily against stay because, as previously discussed, the College's CERCLA claims cannot be litigated in state court. For the same reason, the eighth factor (the presence or absence of concurrent jurisdiction) weighs heavily against a stay.

The remaining factors either do not weigh either for or against a stay or are not significant in this courts' analysis. This action involves no state jurisdiction over property. The state and federal forums are equally convenient; the source of governing law is both federal and state; and neither of the state court cases has progressed significantly further along than this case. Finally, contrary to the Town's assertions, the court finds that this case is neither vexatious nor contrived.

 Considering the above, the court finds that abstention is not warranted under *Colorado River*. The fact that a stay could avoid piecemeal litigation and the fact that the state courts assumed jurisdiction before

930

this court do weigh in favor of a stay. However, "[a]lthough the avoidance of duplicative litigation supports abstention, abstention cannot be based merely on the existence of a parallel state court proceeding." *Illinois Pub. Interest Research Group v. PMC, Inc.,* 835 F.Supp. 1070, 1077 (N.D.Ill.1993) (citing *Locke v. Bonello,* 965 F.2d 534, 537 (7th Cir.1992)). Further, the fact that the state courts cannot adjudicate the College's CERCLA claims weighs heavily against a stay. Thus, balancing all of the considerations in this case, the court finds that the Town has failed to overcome "the presumption against abstention." *Allendale Mut. Ins. Co. v. Bull Data Sys.,* 10 F.3d 425, 430 (7th Cir.1993). Accordingly, the court finds that this is not one of those "exceptional cases" where a stay under *Colorado River* would be appropriate.

### III. *CONCLUSION*

For the foregoing reasons, the court declines to abstain from exercising jurisdiction over this case; accordingly, defendant's motion to dismiss plaintiff's second amended complaint is denied. Defendant is ordered to file an answer to plaintiff's second amended complaint no later than September 14, 1998.